## HICKS v. BIGELOW.

### No. 564.

Municipal Court of Appeals for the District of Columbia.

Nov. 26, 1947.

J. Austin Latimer and Ward H. Oehmann, both of Washington, D. C., for appellant.

David I. Abse, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

The question on this appeal is whether under the District of Columbia Emergency Rent Act [1] the purchaser of a cooperative apartment, desiring it for her personal occupancy, is entitled to evict a tenant in possession.

The tenant Jane Hicks, who is appellant here, has occupied an apartment in the Parkside Apartment at 1702 Summit Place, Northwest since 1941, having then gone into possession under a one year lease with Real Estate Mortgage and Guaranty Corporation which then owned the building. In July 1946, that company sold the building to Gilpin Properties, Inc. and as part of the transaction the Hicks lease was assigned to the new owners. Early this year a plan of cooperative ownership was prepared and the building was deeded to a corporation known as "1702 Summit Pl., N. W., Owners, Inc." Shares of stock in the new company were offered for sale, first to

---

[1] Code 1940, Supp. V, 45—1601 et seq.

tenants and then to the general public. The entire building, was, at the time of the trial, under cooperative ownership. Under a "Cooperative Apartment Sales Agreement" plaintiff Jenette C. Bigelow acquired 67½ shares of stock in the new company and, with such stock, a "Proprietary Lease" purporting to give her the right to possession of the Hicks apartment for ninety-nine years with the right of one hundred-year renewals. Thereafter, plaintiff Bigelow served the tenant with the statutory thirty-day notice to quit and then with the landlord and tenant suit which is the subject of this appeal. In the trial, which was by jury, plaintiff prevailed. Defendant has brought the case here for review.

Tenant's contentions may be summarized as follows: (1) that the entire transaction by virtue of which the plaintiff claims ownership is in violation of the District of Columbia Emergency Rent Act, and (2) that plaintiff is not an owner or landlord entitled to maintain the suit under the Act. These defenses were suitably raised in the trial court through a motion for directed verdict.

In support of her first main proposition, appellant points to the fact that the Gilpin Company paid $165,000 for the property, and resold it to the cooperative group less than a year later for $292,250. Appellant argues that this large profit bespeaks bad faith and indicates an intent to circumvent the operation of the Rent Act. Undeniably the profit was great, but as we have previously pointed out "the Rent Act does not attempt to regulate profits on the sale of property." [2] It may be that the cooperative group overpaid for the building. But even if that be true we cannot say that it has any bearing on the question of the personal good faith of this plaintiff. There was not the slightest evidence that the plaintiff had lent herself to any improper scheme or illegal plan designed to force the defendant, or any other tenants, out of the building. Nor is there anything in the record to overcome her claim that she bought the apartment in complete good faith and in the expectation of occupying it for her own use.

Appellant's next argument is that plaintiff is not entitled to prevail because she is not a "landlord" within the meaning of the Rent Act. That Act, as is now generally well-known, provides that no suit for possession of "housing accommodations" shall be maintainable unless (among other stated exceptions) the landlord seeks possession in good faith for his own immediate personal use and occupancy as a dwelling.[3]

Was the plaintiff a "landlord" within the meaning of the Act for the purposes of this litigation? Section 1611(g) defines a landlord as including "an owner, lessor, sublessor, or other person entitled to receive rent for the use or occupancy of any housing accommodations." Section 1611 (a), defining housing accommodations, specifically includes apartments. These two definitions seem to fit this plaintiff and this apartment. But we go further and inquire into the origin of plaintiff's status as a "landlord" to determine whether she has a right to maintain the suit.

Appellant insists that plaintiff is nothing more than another tenant, different only from the tenant in possession in that she has a longer term lease. That is probably the pivotal point in the case. Plaintiff, like the others who entered into the cooperative enterprise, signed a "Cooperative Apartment Sale Agreement" by which, upon terms recited therein, she agreed to buy the apartment for $6,750. In that document plaintiff was repeatedly referred to as "buyer" and the Gilpin Company as "seller." This agreement was dated May 27, 1947. On the same day plaintiff received a certificate of stock in "1702 Summit Pl., N. W., Owners, Inc." the new cooperative owner of the property. Such certificate was by its terms transferable; but it expressly stipulated that the "Proprietary Lease", to which we shall refer, would be issuable only by authority of the Board of Directors. On the same day plaintiff was given a "Proprietary Lease" running to December 31, 2047, with the right of one

[2] Knowles v. Mosher, D.C.Mun.App., 45 A.2d 755, 756.

[3] Code 1940, Supp. V. 45—1605(b) (2).

hundred-year renewals thereafter. Therein she is referred to as lessee and her right to permanently occupy the apartment is fixed. With considerable elaboration the agreement sets out how the cooperative property is to be maintained and operated, how the "shares" shall be payable by the lessee, how and under what circumstances the building itself may be sold or mortgaged, and other details incident to the management of the building. All these papers taken together disclose a pattern of cooperative ownership of the apartment building by the tenant-owners.

Looking at all these circumstances we think this plaintiff was entitled to maintain her suit for possession. True, she did not own a fee simple title; but that is not made a condition precedent by the Rent Act. Under the Act, as we have said, she is a landlord under the classification which includes "lessor, sublessor, or other person entitled to receive rent." As between plaintiff and the cooperative corporation "in form there is a landlord-tenant relationship, but in substance the apartments are owner occupied. The amounts paid by the stockholders as 'rent' really represent the cost of operation, maintenance, etc., of their own property." [4]

There are no appellate decisions in this jurisdiction on the precise question before us. But in two cases involving cooperative apartments, which were before the United States Court of Appeals, that court described cooperative stockholders as "owners" and as having "legal title" to the apartments. [5]

The only applicable decisions in other jurisdictions seem to have arisen in New York. The courts of that state treat the cooperative corporation as analogous to a partnership and the tenant-purchasers as cooperative owners. [6] In one New York case the court declared that "the tenant

stockholders in a co-operative apartment building are concerned in the purchase of a home." And the court said further "the primary interest of every stockholder was in the long term proprietary lease alienation of which the corporation had the power to restrain * * * the stock was incidental to that purpose and afforded the practical means of combining an ownership interest with a method for sharing proportionately the assessments for maintenance and taxes." [7] This, it seems to us, accurately defines the legal status of a purchaser of a cooperative apartment under the circumstances we have here. Such purchaser is more than a mere tenant or lessee. She has certain proprietary rights which a mere tenant does not have. She has most of the attributes of an owner. She has a voice in the management and operation of a building. She has a voice in the selection or approval of other tenant-owners. She has a voice, too, in the important matter of any proposed sale or mortgage of the property. More important, she has the exclusive, personal right to occupy her particular apartment. To say that despite her investment in the cooperative, and despite the privileges and prerogatives vested in her by the documents we have described, she is barred from proceeding under the Rent Act would be to disregard her rights. That we cannot do. Though the Rent Act was enacted primarily for the benefit of tenants, landlords have rights too. [8] And when the rights of a landlord are as clear as we think they are here, it is the duty of the courts to give them validity.

The basic question before us was presented to the Municipal Court in an earlier case, Osborne v. Page, 71 W.L.R. 225. In a memorandum opinion the trial court stated the law substantially as we now declare it. In the opinion, however,

---

[4] Osborne v. Page, infra.

[5] Moses et al. v. Boss, 63 App.D.C. 381, 72 F.2d 1005; Wardman Const. Co. v. Flynn, 60 App.D.C. 357, 54 F.2d 831.

[6] 1165 Fifth Avenue Corporation v. Alger, 261 App.Div. 608, 26 N.Y.S.2d 671 (reversed on other grounds in 288 N.Y. 67, 41 N.E.2d 461, 141 A.L.R. 1157); Tompkins v. Hale, 172 Misc. 1071, 15 N.

Y.S.2d 854; 542 Morris Park Ave. Corporation v. Wilkins, 120 Misc. 48, 197 N.Y.S. 625.

[7] Penthouse Properties v. 1158 Fifth Avenue, 256 App.Div. 685, 11 N.Y.S.2d 417, 422.

[8] Arsenault v. Angle, D.C.Mun.App., 43 A.2d 709.

there was this sentence which appellant stresses: "If this cooperative apartment had been created since the District of Columbia Emergency Rent Act went into effect I would be inclined to hold differently." That language was not necessary to the decision, being merely a passing observation as to how the judge would be "inclined" to rule if the facts were different. Moreover, the statement obviously referred to the issue of plaintiff's good faith which we have held is ordinarily a question of fact.[9] That issue has been decided by the jury in this case and the evidence to support the verdict is more than ample.

Affirmed.

[9] Staves v. Johnson, D.C.Mun.App., 44 A.2d 870; Heindrich v. Dimas-Aruti, D. C.Mun.App., 42 A.2d 138; De Bobula v. Coppedge. D.C.Mun.App., 40 A.2d 255.