GREEN *v.* GREENBELT HOMES, INC.

[No. 49, September Term, 1963.]

*Decided October 17, 1963.*

The cause was submitted to Brune, C. J., and Henderson, Prescott, Horney and Marbury, JJ.

Submitted on brief by *Emmett H. Nanna, Jr.*, and *Nanna & Grant* for the appellant.

Submitted on brief by *Jerrold V. Powers* and *Sasscer, Claggett & Powers* for the appellee.

HORNEY, J., delivered the opinion of the Court.

In an action for declaratory relief, the Circuit Court for Prince George's County, ordered and decreed that the mutual ownership contract between Greenbelt Homes, Inc., a cooperative housing development, and Carolyn E. F. Green, a member of the corporation, had been lawfully terminated. The member appealed, claiming that the terms of the contract permitting termination were legally inconsistent with the nature of the estate she acquired under the contract.

In pertinent part,[1] the mutual ownership contract provided that:

---

1. Less pertinent parts of the contract read as follows:

"7(a). *Occupancy:* The Member shall occupy the dwelling unit * * * as a private dwelling * * * for himself and his immediate family and may enjoy the use, in common with all other Members * * * of all community property and facilities of Greenbelt, so long as he remains a Member * * *, occupies the dwelling, and abides by all the terms of this Contract and the rules and regulations adopted by the Corporation as provided for in paragraph 7(b) hereof. Use of the dwelling unit or any part thereof for any purpose contrary to the interests of the Corporation or its members as determined by the Corporation is not authorized. It shall be the duty of each Member to respect the comfort and peace of mind of his neighbors, as well as of all Members and tenants * * *. The Member agrees that he will not * * * do or suffer to be done any act or thing which shall or may be a nuisance, annoyance, inconvenience, or damage to the Corporation or its Members or tenants, or to the occupants of adjoining dwellings or of the neighborhood.

"7(b). *Rules and Regulations Relating to Occupancy and Care of the Dwelling:* The Corporation reserves the right to impose any reasonable rules and regulations * * * as in its judgment may be necessary or desirable for the management and control of Greenbelt and the Member's dwelling unit by the Corporation, for the safety, care and cleanliness of the dwelling unit and surrounding

"2. *Sale and Purchase of Perpetual Use*: Subject to all the provisions of this Contract and for the Purchase Price hereinafter set forth, the Corporation hereby agrees to sell to the Member, and the Member hereby agrees to purchase from the Corporation, a right of Perpetual use and enjoyment * * * of the following dwelling unit and the lot on which situated, the boundaries of which shall be determined by the Corporation, located at the Greenbelt Housing Project, Greenbelt, Maryland * * *:

6 B Plateau Place      Unit # 2639    Type G2M Balance due on this contract is $1,727.41 in 232 monthly payments with four percent interest on the unpaid balance. This makes a total interest and amortization payment due each month of $10.71. This payment is quite apart from necessary payments of taxes and operating expenses.

\* \* \* \* \*

"13. *Termination of Contract by Corporation for Default or for Cause*: In the event of default by the Member * * * of any payments or charges required under this Contract, or violation of any of the provisions hereof, the Corporation may terminate this contract upon ten (10) days written notice to the Member. The Corporation may terminate this Contract upon thirty (30) days written notice if its board of directors subject to and in accordance with provisions of the By-Laws of the Corporation, shall determine that the Member, for sufficient cause is undesirable as a resident in Greenbelt because of objectionable conduct on the part of the Member or of a person living in his dwelling unit. To violate or disregard the rules and

---

premises, and for the preservation of good order and comfort therein, and the Member agrees faithfully to observe and comply with such rules and regulations and further agrees that all persons living in the dwelling unit also will observe and comply with such rules and regulations."

regulations provided for in paragraph 7(b) hereof, after due warning, shall be deemed to be objectionable conduct."

The member had occupied the premises for about two years, when, as a result of complaints by other occupants of the housing development, and after a hearing thereon at her request, the board of directors of the corporation duly notified her of the termination of the mutual ownership contract, and at the same time advised her of the right to appeal the decision of the board to the membership of the corporation.

In the notice of termination, the member was informed that the board of directors had found, on the basis of evidence presented at the hearing, that she had "persistently and grossly" violated the contract in that an adult man who was not related by blood or marriage was living with her; that she had failed to provide sanitary care for the pets she maintained on the premises; that as a result of her failure to maintain adequate housekeeping standards she had created offensive odors and had infested her home and the homes of others with vermin; and that she had permitted her teen-age daughter to give noisy, unchaperoned parties during the day and at night which disturbed the peace and quiet of the neighborhood.

The member having appealed pursuant to the by-laws, a membership meeting of the corporation was held to consider the matter. At the meeting, after hearing and discussing the charges, the action of the board of directors in terminating the contract was approved and ratified by a majority vote of the membership.

The corporation promptly notified the member of the result of the appeal and requested her to vacate the premises forthwith. At the same time she was advised that she could sell her "perpetual use right" on the open market, or if she preferred, the corporation was ready to offer her $1750 for it. But the member refused to vacate, and this action followed. The proceedings were submitted to the lower court on bill and answer and the exhibits filed therewith.

Since the parties concede that no factual questions are involved, and further concede that the corporation followed the

prescribed procedures in terminating the mutual ownership contract, the only question confronting the court is whether the provisions of the contract relating to termination were valid. It is the contention of the member that the financial terms and the wording of the contract — to the effect that the corporation agreed to "sell" and the member agreed to "purchase" the right of "perpetual use and enjoyment" of the dwelling unit and the lot on which it was situated—were sufficient indicia of ownership to classify her as an owner of real property [2] rather than a holder of a leasehold interest. She bases her claim primarily on the decision in *Tudor Arms Apts. v. Shaffer,* 191 Md. 342, 62 A. 2d 346 (1948), involving a proprietary lease which was substantially the same as the mutual ownership contract in this case. That case, however, instead of supporting the appellant's contention that she was an owner and not a lessee, clearly indicates that in a case such as this—where the issue concerns the right of a member to occupy a dwelling unit after proof of her misconduct — the member of the cooperative corporation would be held to be a lessee rather than an owner. It is true that in *Tudor Arms,* where this Court was construing the effect of a rent control act, it was held that a purchaser-lessee of a cooperative apartment unit was an owner within the meaning of the Federal Housing and Rent Act of 1947 and came within the exception to that act which permitted a landlord or owner to maintain a possessory action against a tenant who refused to yield possession of an apartment. Nevertheless, it is important to note that this Court in referring to the cooperative plan stated (at p. 348) that "the essence of the transaction is that in exchange for a capital investment, a prospective purchaser will obtain a right, under the proprietary lease, to occupy a particular unit for an indefinite period, *during good behavior."* (Emphasis added.) It is also true that many courts, in considering

---

2. It is interesting to note that in a similar situation under the provisions of Ch. 387 of the Laws of 1963 (an act adding new §§ 116 through 142 to Art. 21 of the Code) the owner of a "condominium unit" in a "condominium project" would have the exclusive fee simple ownership of his unit and have a common right to a share with other owners of an undivided fee simple interest in the common elements of the property under § 120(a) of the act.

the purposes of rent control acts and other statutes, have found it justifiable to disregard the corporate entity and to hold that members or shareholders of a cooperative apartment or housing project were the owners. See *Abbot v. Bralove,* 81 F. Supp. 532 (D.D.C. 1948); *Hicks v. Bigelow,* 55 A. 2d 924 (D.C. Mun.App. 1947). See also *In re Pitts' Estate,* 22 P. 2d 694 (Cal. 1933), involving a statute affording a right to offset a lien claim against the purchase price of real property. But such cases, including *Tudor Arms,* must be considered in light of the particular statute involved, and certainly cannot be interpreted to mean that the right of the purchaser-lessee in the cooperative apartment was equivalent to a fee simple interest.

In 1 *American Law of Property* (Casner ed. 1952), § 3.10, it is said (at p. 198) that:

> "From the standpoint of legal structure the so-called cooperative apartment housing may take one of three general forms. * * * The third form involves the use of a corporation which holds legal title to the property. Shares of stock or, if a non-stock corporation, memberships are sold to persons who will occupy the housing units, the number of shares or the cost of the membership required depending on the value of the particular apartment or unit."

When shares of stock are sold, proprietary leases are made by the corporation to the shareholders, in which there are, among other things, the provisions concerning the term of the lease and the payment of rent, which is based on estimates of operational costs and capital indebtednesses. Other provisions include covenants against assignment without the consent of the corporation, that the tenant will make inside repairs but no structural changes, and that the corporation may forfeit the lease for a breach of the covenants or violation of the rules of conduct. But when memberships are sold in a non-stock corporation, as was the case here, the sale is evidenced by a contract made between the corporation and a member who purchases a membership, in which, among other things, there are provisions for payment of taxes and operating expenses. Other provisions pertain to the occupancy of the dwelling unit by the mem-

ber, the rules and regulations relating to occupancy, and the termination of the contract for default or for cause arising out of a violation of the rules and regulations or other misconduct on the part of a member.

It is further stated at p. 200 (of Casner's edition of 1 *American Law of Property*) that:

> "[I]n legal theory the corporation is distinct from its shareholders [or members], no one of whom has a right to receive legal title to any specific property of the corporation under the better-drawn plans, and it is necessary that this distinction be observed in order to carry out the purposes of the cooperative. The courts have recognized that the relation is that of landlord and tenant in allowing the corporation the usual remedies of a landlord against a tenant."

An important factor in the maintenance of a cooperative housing project is the control of the activities of the cooperative members living within the project. In a recent article, *Restrictions on the Use of Cooperative Apartment Property*, by Arthur E. Wallace, 13 Hastings Law Journal, 357, 363, it is said:

> "The economic and social interdependence of the tenant-owners demands cooperation on all levels of cooperative life if a tolerable living situation is to be maintained. Each tenant-owner is required to give up some of the freedoms he would otherwise enjoy if he were living in a private dwelling and likewise is privileged to demand the same sacrifices of his cotenant-owners with respect to his rights.
>
> "By analogy, the cooperative agreement is really a community within a community, governed, like our municipalities, by rules and regulations for the benefit of the whole. Whereas the use of lands within a city is controlled by zoning ordinances, the use of apartments within the cooperative project is controlled by restrictive covenants. The use of the common facilities in the project is controlled on the same theory that

the use of city streets and parks is regulated. In both situations compliance with the regulations is the price to be paid to live in and enjoy the benefits of the particular organization."

To determine the intent of the parties and the status created, it is necessary to look to "the writing between the parties, to the circumstances under which they were made, and to the matter with which they deal." *1915 16th St. Co-op. Ass'n. v. Pinkett,* 85 A. 2d 58 (D.C.Mun.App. 1951). We think it is clear from the mutual ownership contract that the restrictions on the use of the cooperative dwelling unit were covenants between the member and the corporation, the breach of which gave the corporation the right to terminate the contract. We see no practical difference between this contract and a lease which provides that it can be terminated by the lessor when its provisions as to the use to be made of the premises by the lessee are breached. For a case upholding the validity of such a lease, see *Baltimore Butchers Abattoir & Live Stock Co. v. Union Rendering Co.,* 179 Md. 117, 17 A. 2d 130 (1941). See also 1 *American Law of Property* § 3.10, at p. 198. In her tenant status, the member was given the right of occupancy so long as she did not make "[u]se of the dwelling unit or any part thereof for any purpose contrary to the interests of the Corporation or its members." It is apparent, we think, that the objectionable conduct of the member was a sufficient breach of covenant to warrant the corporation exercising its right to terminate the interest of the member in the dwelling unit.

Since we find no error in the ruling of the lower court, the decree must be affirmed.

*Decree affirmed; the appellant to pay the costs.*