[Civ. No. 40473. Second Dist., Div. Five. July 30, 1973.]

SUN TERRACE MANOR, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE LOS ANGELES JUDICIAL
DISTRICT OF LOS ANGELES COUNTY, Defendant and Respondent;
SALLY GONZALES et al., Real Parties in Interest.

## COUNSEL

Coulter, Vernoff & Brewer and George P. Coulter for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Aaronson, Gruber & Goar and Joel S. Aaronson for Real Parties in Interest.

## OPINION

**STEPHENS, J.**—On September 20, 1971, appellant petitioned superior court for a writ of mandate to compel respondent municipal court to assume subject matter jurisdiction in unlawful detainer actions that appellant had previously caused to be instituted against real parties in interest.

In brief, appellant's petition alleged the following: Appellant was a California corporation and owned a "project of cooperative apartments commonly known as Sun Terrace Manor . . . ." Real parties in interest were "members (shareholders) of [appellant], and as such members, were entitled to occupancy of a specific dwelling unit in said apartment project, subject to the terms and conditions of a proprietary lease (occupancy agree-

ment) between [appellant] and each [real party in interest]."[1] Appellant's corporate bylaws vested its board of directors with the power to "terminate membership and occupancy rights for cause," and the "occupancy agreement" provided in part that, upon a member's "default," appellant "may at its option give to the Member notice that this agreement will expire at a date not less than ten (10) days thereafter."

On July 10, 1971, appellant's board of directors, by resolution, terminated real party in interest Gonzales' "membership and tenancy rights." On that same day, appellant served notice of "termination" upon Gonzales. Gonzales' default was founded upon the grounds that Gonzales had sublet her dwelling, had harassed, annoyed, threatened, harmed, and disrupted other tenants, and had committed wilful violations of the "rules and regulations by which the tenants of said project are governed." On August 3, 1971, and August 13, 1971, appellant's board of directors again resolved to terminate Gonzales.

On August 3, 1971, appellant's board of directors terminated real party in interest Jacobo's "membership and tenancy rights." On August 4, 1971, appellant served Jacobo with notice of "termination." Jacobo's default was founded upon grounds similar to Gonzales' default. On August 13, 1971, appellant's board of directors again resolved to terminate Jacobo.

Also on August 3, 1971, appellant's board of directors resolved to terminate real party in interest Davis' "membership and tenancy rights." On August 13, 1971, appellant served Davis with notice of termination. Davis' default was founded upon grounds similar to the Gonzales and Jacobo defaults, with the additional ground of nonpayment of rent. On that same day, August 13, 1971, appellant's board of directors again resolved to terminate Davis.

Sometime thereafter, although neither appellant's petition nor any other part of the record tells us when, appellant filed complaints in unlawful detainer, in respondent municipal court, against each of the real parties in interest.

---

[1] Specifically, appellant's bylaws provided that a "member" is "any natural person approved by the Board of Directors [who] executes a Subscription Agreement, if membership is purchased from the Corporation, and Occupancy Agreement in the usual form employed by the Corporation covering a specific unit in the housing project." The bylaws further provided that the cost of a membership varied from $150 to $250. The "occupancy agreement" provided that "members" enjoy "the right to occupy [appellant's]" dwelling units, "renewable thereafter for successive three-year periods. . . ." The "Cooperative Agency Agreement" shows that "Certificates of Stock" were drawn to "evidenc[e] membership."

On September 8, 1971, respondent municipal court refused to assume jurisdiction in the unlawful detainer proceedings because "summary dispossession proceedings were an improper and inadequate forum for the termination of the membership and occupancy rights of Real Parties in Interest in the Sun Terrace Manor Apartments and that the [respondent municipal court] therefore lacked subject matter jurisdiction of said actions."

Thereafter, on September 20, 1971, appellant petitioned superior court for the aforementioned writ of mandate to compel respondent municipal court to assume jurisdiction in the unlawful detainer actions. Superior court issued an alternative writ, but on September 30, 1971, discharged the alternative writ and denied the petition for a writ of mandate.

Appellant appeals from the denial of its petition for writ of mandate.

■ The municipal court, of course, has subject matter jurisdiction over certain actions in unlawful detainer,[2] and our unlawful detainer statute provides in part that "[a] tenant of real property . . . is guilty of unlawful detainer . . . [w]hen he continues in possession . . . after default in the payment of rent, . . . [or] after a neglect or failure to perform other . . . covenants of the lease or agreement under which the property is held, including any covenant not to . . . sublet . . . ." (Code Civ. Proc., § 1161.) Therefore, if real parties in interest were in fact "tenant[s]" within the meaning of the unlawful detainer statute, then respondent municipal court did in fact have subject matter jurisdiction over the unlawful detainer actions, and the superior court did err in refusing to mandate respondent municipal court to assume that jurisdiction. (5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 81, p. 3858.) On appeal, therefore, we are confronted with the question of whether the real parties in interest were "tenant[s]" within the meaning of our unlawful detainer statute.

Since there appears to be no California case law on this precise question, we turn to other authorities that have considered the character of the relationship of a corporate cooperative with the shareholder-tenant.

In a Maryland case, the court quoted with approval the following language from 1 American Law of Property (Casner ed. 1952) at page 200:

---

[2]Specifically, a municipal court has subject matter jurisdiction over unlawful detainer actions only "where the rental value is six hundred dollars ($600) or less per month and the whole amount of damages claimed is five thousand dollars ($5,000) or less." (Code Civ. Proc., § 89, subd. (a)(4).) In the case before us, the unlawful detainer complaints are not included in the record on appeal, but there is no suggestion from either the record or the parties that the dollar-allegations of the unlawful detainer complaints exceeded the dollar-jurisdiction of the municipal court.

" '[I]n legal theory the corporation is distinct from its shareholders [or members], no one of whom has a right to receive legal title to any specific property of the corporation . . . and it is necessary that this distinction be observed in order to carry out the purposes of the cooperative. The courts have recognized that the relation is that of landlord and tenant in allowing the corporation the usual remedies of a landlord against a tenant.' " (*Green* v. *Greenbelt Homes, Inc.*, 232 Md. 496 [194 A.2d 273, 276].)

In a New York case, the court held that "[t]he relationship between the [shareholder-tenant] and the [corporate cooperative] is that of landlord and tenant. The fact that the tenant is also a stockholder of the corporation owning and managing the entire premises does not nullify or negate their essential relationship of landlord and tenant in relation to the particular apartment occupied by the [shareholder] (tenant). [T]he identity of the stockholder remains distinct and separate from that of the corporation, and there is no sufficient merger of interest to erase the relationship of landlord and tenant between them. It is elementary that the corporation managing the property and the tenant are distinct and separate entities." (*Brigham Park Co-Operative Apts., Sec. 4* v. *Lieberman* (Mun.Ct.) 158 N.Y.S.2d 135, 136.)

The approach of the Maryland and New York courts has further been adopted by a number of legal commentators (Sengstock, *Homeownership: A Goal for All Americans*, 46 J. Urban Law. 313, 435, 443; Ramsey, Condominium: The New Look in Co-Ops (1962) p. 4; Rohand, *Cooperate Housing: An Appraisal of Residential Controls and Enforcement Procedure*, 18 Stan.L.Rev. 1323, 1331, 1333; Friedman, *Community Apartments: Condominium or Stock Cooperative?*, 50 Cal.L.Rev. 299, 309) and appears to be justified: "With one mortgage and one tax bill for the whole [corporate cooperative], a sizeable number of transfers to financially irresponsible people could result in responsible shareholders paying a higher bill . . . . In a condominium a financially irresponsible person is a nuisance because he does not pay his share of the upkeep. In a cooperative he is a menace whose unreliability may occasion seizure of the whole property by the government for taxes, or by banks for arrears in mortgage payments" (Miller, *Cooperative Apartments: Real Estate or Securities?*, 45 B.U.L.Rev. 465, 495).

We note, too, that a writer for the California Law Review has simply assumed that the shareholder-tenant is a "tenant" within the definition of our unlawful detainer statute: "[T]he costs of operating [the apartment] building are paid out of a maintenance fund. In both the stock cooperative and the condominium this fund is maintained by assessment. If a party

fails to pay the assessments, his share of the burden is shifted to the other owners or tenants until the default is cured. Therefore, effective enforcement of the covenant to pay the assessments demands that any breach thereof be speedily remedied. [¶] It appears that the stock cooperative is superior in this respect. The lease is generally made conditional upon the occurrence of any of several significant conditions, which usually include breach of any of the covenants that are contained in the typical condominium declaration. [Fn. omitted.] If any enumerated condition does occur the lessor-corporation may exercise the summary remedy available to it [fn. omitted][3] upon compliance with a short notice requirement. [Fn. omitted.] The corporation is then free to sell, lease, or rent the premises to another party within a relatively short period of time, [fn. omitted] thereby removing the financial burden imposed on the non-breaching tenant-shareholders." (Friedman, *Community Apartments: Condominium or Stock Cooperative?, supra,* 50 Cal.L.Rev. 299, 309.)

In addition to these authorities, the occupancy agreement entered into between [appellant] and [real parties in interest] provides specifically that the shareholder-tenant "agrees that there exists under this Occupancy Agreement a landlord-tenant relationship and that in the event of a breach or threatened breach by the Member [shareholder-tenant] of any covenant or provision of this Agreement, there shall be available to the Corporation such legal remedy or remedies as are available to a landlord for the breach or threatened breach under the law by a tenant of any provision of a lease or rental agreement."

Therefore, in light of the aforementioned authorities, and in light of real parties in interest agreeing to endow appellant corporate cooperative with "such . . . remedies as are available to a landlord," then, under these circumstances, we hold that real parties in interest were "tenant[s]" within the meaning of our unlawful detainer statute.[4] The superior court therefore erred in refusing to mandate respondent municipal court to assume subject matter jurisdiction in the unlawful detainer actions.

The order of the superior court is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Kaus, P. J., and Ashby, J., concurred.

---

[3]The omitted footnote is as follows: "Cal. Code Civ. Proc. § 1161 (unlawful detainer); Cal. Civ. Code § 791 (right of reentry)."

[4]Our opinion is limited to the question of subject matter jurisdiction in unlawful detainer actions, and we express no opinion as to any other legal relationships that may exist between appellant and real parties in interest. (See Penny & Broude, Land Financing.)