Lillian & Ronald SNOWDEN,
Appellants,

v.

BENNING HEIGHTS COOPERATIVE,
INC., Appellee.

No. 87–1204.

District of Columbia Court of Appeals.

Argued Jan. 10, 1989.
Decided April 12, 1989.

Bernard A. Gray, Sr., Washington, D.C., for appellants.

Eric M. Rome, for appellee.

Before ROGERS, Chief Judge, and BELSON and SCHWELB, Associate Judges.

ROGERS, Chief Judge:

The issue in this appeal is whether a foreign cooperative association owning premises in the District of Columbia may terminate membership in the association for failure to pay monthly carrying charges without a vote of the membership pursuant to D.C.Code § 29–1130 (1981). The trial court ruled that, in accordance with a 1984 amendment, D.C.Code § 29–1141 (1988 Supp.), the termination of appellants' membership without a vote of the membership was lawful because the cooperative association followed the procedures authorized by the laws of the state in which it is incorporated. The trial court also ruled that the notice provisions of the District of Columbia Rental Housing Act of 1985, D.C.Code § 45–2551(a) (1986 Repl.), do not apply to the eviction of a member from a cooperative association. We affirm.

I

Appellee, Benning Heights Cooperative, Inc. (BHC or the Cooperative), is a membership housing cooperative incorporated under the laws of the State of Maryland and the owner of premises located in the District of Columbia. Appellants, Lillian and Ronald Snowden, were members of the Cooperative and held a proprietary lease in

the Cooperative at the District of Columbia premises.

Appellants were served with a notice of termination of their membership on April 9, 1986, pursuant to a vote of BHC's board of directors (the Board). The notice alleged that appellants were in arrears of payment of their share of the monthly mortgage payment and operating costs to the Cooperative, and gave appellants ten days to cure the default.

On April 21, 1986, appellants proposed a payment schedule for the arrearage, which the Board accepted. Appellants failed, however, to make payments according to the schedule, and on June 17, 1986, BHC instituted an action for possession. The trial court denied BHC's motion for summary judgment on the ground that BHC had failed to serve appellants with the thirty-day notice to quit required by D.C.Code § 45–1403 (1986 Repl.) for tenants-at-will.

BHC thereafter served appellants with notice under § 45–1403, and upon the expiration of the thirty-day period, BHC instituted another action seeking possession. Appellants contested the action, arguing that BHC had not legally terminated appellants' membership in the Cooperative in accordance with D.C.Code § 29–1130 (1981),[1] and that appellants were not served proper notice under D.C.Code § 45–2551

(1986 Repl.).[2] The trial court ruled that D.C.Code § 29–1141 (1988 Supp.),[3] controlled BHC's right, under Maryland law, to terminate appellants' membership in the Cooperative pursuant to a vote of the Board as set forth in the Occupancy Agreement, rather than by a vote of the membership under D.C.Code § 29–1130, and that the Cooperative was not subject to the Rental Housing Act provisions. Appellants contend the trial court erred in both rulings.

## II

### A.

In 1984 the Council of the District of Columbia amended the District of Columbia Cooperative Association Act to provide that a foreign cooperative "shall govern itself in accordance with its bylaws and the laws of the state wherein it is organized." See note 3, *supra*. The words of the 1984 amendment appear unambiguous, and the legislative history indicates the clarity of the D.C. Council's intent.[4] The Council was concerned with ensuring the economic health of cooperatives, recognizing that the requirement for expulsion only by a membership vote presented practical difficulties.[5] The sponsor of the amendment noted, for example, that because Dis-

---

1. D.C.Code § 29–1130 (1981) provides in relevant part:

     A member [of a cooperative association] may be expelled by the vote of a majority of the members voting at a regular or special meeting. The member against whom the charges are to be preferred shall be informed thereof in writing at least 10 days in advance of the meeting, and shall have an opportunity to be heard in person or by counsel at said meeting....

     This provision is part of the District of Columbia Cooperative Association Act, D.C.Code § 29–1101 *et seq.* (1981), as amended (1988 Supp.).

2. D.C.Code § 45–2551 (1986 Repl.) provides in relevant part, "No tenant shall be evicted from a rental unit for any reason other than for nonpayment of rent unless the tenant has been served with a written notice to vacate which meets the requirements of this section."

3. D.C.Code § 29–1141 (1988 Supp.) provides:

     A foreign corporation or association operating on a cooperative basis and complying

with the applicable laws of the state wherein it is organized shall be entitled to do business in the District of Columbia as a foreign cooperative corporation or association, *and shall govern itself in accordance with its bylaws and the laws of the state wherein it is organized.* (Emphasis added). The italicized part of this provision was added by the Council of the District of Columbia in 1984.

     Appellants also contended that BHC failed to properly serve the thirty-day notice to quit under § 45–1403. The trial court disagreed, and this ruling is not an issue on appeal.

4. *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753, 754 (D.C.1983) (in statutory interpretation the court looks first to plain words of statute, and may refer to legislative history even where the words are clear).

5. *See* Minutes of Council of the District of Columbia, Thirty-third Legislative Session, Council Period Five, Second Session, April 10, 1984 (Council Minutes), at 23, 25.

trict of Columbia law prohibits proxy voting, a foreign cooperative would not be able to expel a member for "nonpayment of cooperative fees or for any other serious offense against the cooperative" since a quorum to vote on the expulsion could be impossible to achieve without proxies.[6] The intent of the amendment, as declared by its sponsor, therefore, was to "allow the [c]ooperative [a]ssociation to govern itself in accordance with its bylaws and the laws of the state within which it was organized." Thus the main thrust of the amendment was to have District of Columbia law "recognize as valid how foreign corporations are authorized to act under the [law of the] outside state."[7] Responding to one Council member's concern that the amendment was inconsistent with other District of Columbia laws, the sponsor of the amendment emphasized that the amendment was designed simply to enable cooperatives to operate in a "financially healthy environment."[8]

The trial court found that the intent of the 1984 amendment was to authorize foreign cooperatives to function in accordance with the laws of the state in which they are incorporated, as opposed to District of Columbia law, with regard to governance issues. Appellants claim this was error because the D.C. Council did not realize the effect that the amendment would have and that the amendment was intended to change only the way foreign cooperatives vote, not to authorize termination without membership voting, as may be allowed in other states. We disagree with appellants' interpretation of the Council's intent. The amendment's sponsor recognized that the 1984 amendment might affect the treatment of foreign cooperatives owning premises in the District of Columbia.[9] Rather than limiting the amendment to changing the voting procedures of foreign cooperatives, the Council members acknowledged repeatedly that the amendment's broader purpose was to allow foreign cooperatives to operate under the laws of the state in which they are incorporated.

Appellants also maintain that the amendment so interpreted would make every

---

6. *Id.* at 23.

7. *Id.* at 26. The sponsor also stated that the amendment was in response to some court decisions, but did not indicate the cases to which he was referring.

Prior to the 1984 amendment, two cases suggested that cooperatives formed under the laws of another jurisdiction were subject to the District of Columbia Cooperative Association Act in certain respects. In *Clydesdale, Inc. v. Wegener,* 372 A.2d 1013 (D.C.1977), the court held that a foreign cooperative must comply with its own bylaws and the voting requirements of D.C.Code § 29–830 (1973), which was identical to D.C. Code § 29–1130 (1981), when attempting to expel a member. *Id.* at 1016–17 & n. 3. The cooperative in *Clydesdale* wanted to expel the member both for his default in payment of maintenance fees and for his alleged improper conduct under the cooperative's bylaws. The court stated, "It is true that [the cooperative] is incorporated in the State of Delaware, but this is not to say that foreign incorporation alone can insulate [the cooperative] from observation of the substantive rights guaranteed to appellee by our Code." *Id.* at 1016 n. 3. The cooperative in *Clydesdale* had not observed either its own bylaws, requiring it to provide the defaulter a twenty-four hour grace period to cure the default, or the District's statute giving the member an opportunity to be heard at a meeting of the membership. Hence the court did not reach the precise issue raised in the instant case.

In another case, a judge dismissed an eviction proceeding brought by a foreign cooperative for non-payment of maintenance fees, without reaching the merits of the claim, for lack of certification to bring suit. *See* 2 Rohan and Reskin, *Cooperative Housing Law and Practice,* § 3.02 n. 8 (1988) (citing *Van Ness North Coop. Inc. v. Eghbal,* Index No. 53497–83 (Super.Ct.D. C.)). The foreign cooperative, which was incorporated in Delaware, had its certificate of authority revoked because its proportionate voting system was not in compliance with the District's law of one member, one vote, D.C.Code § 29–1113 (1981).

8. Council Minutes, *supra* note 5, at 24–25.

9. The sponsor stated, "In the future I don't think it would have any effect because one of the major problems at this point is to try to straighten out those [cooperative associations] that are incorporated in different places at this point in time, in the hopes that we would design legislation in the District eventually that will deal with the whole cooperative problem." *Id.* at 25. Another Council member also emphasized the importance of consistency and clarification of how cooperatives are to operate until the D.C. Council could address the larger questions presented by the methods of organization and governance used by cooperatives, condominiums and other entities. *Id.* at 28–29.

member of a foreign cooperative residing in premises located in the District of Columbia subject to another state's laws. Of course cooperative members then would be treated no differently than are shareholders of foreign corporations, who also are subject to another state's laws. More significantly, cooperative members' rights are protected by the bylaws of the cooperative association and by the provisions of their occupancy agreements, each of which will be personally known to the member. Appellants' argument, moreover, does not present a question of law for this court but rather a matter of policy for the legislature to address, and the Council's debate on the 1984 amendment suggests that it viewed any possible harm arising from such a situation to be outweighed by the benefits of the amendment.

## B.

■ Since we hold that D.C.Code § 29–1141 allows a foreign cooperative to govern itself according to its bylaws and the laws of the state where it was incorporated, the lawfulness of appellants' termination turns on BHC's bylaws (the Bylaws) and the law of Maryland. Article IV, Section 9 of the Bylaws authorizes the Cooperative to terminate the rights of a member under the Occupancy Agreement, and Article 13 of appellants' Occupancy Agreement with BHC defines a default to include the failure to pay monthly carrying, maintenance or utility charges.[10] Neither the Bylaws nor the Occupancy Agreement requires a vote of the membership for termination. Nor is there a Maryland statute requiring a membership vote for termination. The Maryland Cooperative Housing Corporation Act adopted in 1986, Md. Corps. & Ass'ns Code Ann. § 5–6B–01 *et*

seq. (1988 Supp.), excludes from its coverage articles of incorporation, bylaws, certificates of membership, or proprietary leases of cooperatives established before July 1, 1986. *Id.* at § 5–6B–20(a)(2). Prior to the enactment of this statute, Maryland did not have a statute controlling the formation and general powers of cooperative associations. Since the Occupancy Agreement between appellants and BHC was executed in 1983, we look to Maryland case law for guidance on membership termination procedures.

In *Green v. Greenbelt Homes, Inc.,* 232 Md. 496, 194 A.2d 273 (1963), the Maryland Court of Appeals upheld the termination of a cooperative member's leasehold interest, for misconduct which violated the terms of the ownership contract, on the basis that the procedures for expulsion set forth in the occupancy agreement were followed. Neither party in the instant appeal cites any other case or statute concerning cooperative termination procedures in Maryland, and we have found none. It appears, then, that Maryland law only requires the cooperative to follow the procedures set forth in its own bylaws and occupancy agreement for proper membership termination. Since appellants do not claim that BHC failed to follow its own procedures, we find no error by the trial court in ruling that BHC properly terminated appellants' membership in accordance with its Bylaws and the Occupancy Agreement.

Appellants contend, nevertheless, that even if D.C.Code § 29–1141 authorizes BHC to terminate their membership according to the Bylaws, Occupancy Agreement, and Maryland law, this court should consider whether there is a compelling interest in this jurisdiction that requires a foreign co-

---

**10.** Article 13 of the Occupancy Agreement provides:

It is mutually agreed as follows: At any time after the happening of any of the [default] events ... the Corporation may at its option give to the Member a notice that this Agreement will expire at a date not less than ten days thereafter. If the Corporation so proceeds, all of the Member's rights under this Agreement will expire on the date so fixed in such notice, unless in the meantime the default has been cured in a manner deemed

satisfactory by the Corporation, it being the intention of the parties hereto to create hereby conditional limitations, and it shall thereupon be lawful for the Corporation to reenter the dwelling unit and to remove all persons and personal property therefrom, by suitable action or proceeding, at law or in equity, or by any other proceedings which may apply to the eviction of tenants, and to repossess the dwelling unit in its former state as if this Agreement had not been made.

operative to obtain a vote of the membership prior to membership termination. Appellants suggest that the court should apply a conflict of laws analysis, which, they maintain, means that D.C.Code § 29–1130 should be applied to foreign cooperatives in order to protect cooperative members domiciled in the District of Columbia. They argue that such members should be assured of the procedural protections in *Clydesdale, supra* note 7, and note that in *Green, supra,* 232 Md. at 500, 194 A.2d at 275, the occupancy agreement provided for a vote of the entire membership before termination was final.

We need not decide whether there may be a compelling interest to ensure certain procedural protections before terminating membership in a cooperative because there clearly is no such interest in the instant case. This jurisdiction has approved severe sanctions, including expulsion, for a default in payment; often the defaulting member is not afforded the opportunity to have the membership vote on the termination.[11] Presumably this reflects a recognition of the need to resolve as quickly as possible a member's default which could adversely affect the value of the property for the rest of the members.[12] It certainly is consistent with the position of the D.C. Council that although foreign cooperatives might govern themselves differently than District of Columbia law may otherwise require, the financial stability of cooperatives was the more compelling interest.

Appellants make the additional argument that because D.C.Code § 29–1141 had not yet been amended at the time their Occupancy Agreement was executed in December 1983, Article 13 of the Occupancy Agreement, which contemplated termination without a vote of the membership, was void as contrary to D.C.Code § 29–1130 and *Clydesdale, supra* note 7, and could not be used to oust them.[13] Appellants mistakenly assume, however, that prior to the 1984 amendment District of Columbia law required foreign cooperatives to have members vote on termination under D.C.Code § 29–1130. The sponsor of the 1984 amendment described it as a "clarifying amendment"[14] to D.C.Code § 29–1141, thus recognizing that it was unclear whether foreign cooperatives should govern themselves in accordance with District of Columbia law or the law of their state of incorporation. Nor is there case law directly holding that D.C.Code § 29–1130 precluded foreign corporations from using a different procedure, as sanctioned by the law of their state of incorporation, for terminating membership.[15]

### III

■ Finally, appellants contend that there is a landlord-tenant relationship between BHC and themselves, and that BHC, as landlord of a rental unit, was required to give them a thirty-day notice to vacate under the D.C. Rental Housing Act of 1985. *See* D.C.Code § 45–2515(a)(6) (1986 Repl.). Appellants rely on Article 13 of their Occupancy Agreement which provides:

> The Member hereby agrees that there exists under this Occupancy Agreement

**11.** *See, e.g., Gullo v. Veterans Coop. Hous. Ass'n,* 101 U.S.App.D.C. 167, 247 F.2d 573 (1957) (termination of membership for non-payment based on board resolution); *1915 16th St. Co-op Ass'n v. Pinkett,* 85 A.2d 58, 59 (D.C.1951) (termination of membership and subsequent suit for possession).

**12.** *See, e.g., Sun Terrace Manor v. Municipal Court,* 33 Cal.App.3d 739, 744, 108 Cal.Rptr. 307, 310 (1973) ("In a cooperative [a financially irresponsible person] is a menace whose unreliability may occasion seizure of the whole property by the government for taxes or by banks for arrears in mortgage payments.").

**13.** Although appellants did not raise this issue at trial, the court *sua sponte* can address the question of whether a contract offends public policy.

*See Noonan v. Gilbert,* 63 U.S.App.D.C. 30, 31, 68 F.2d 775, 776 (1934). The fact that the law had changed would not alone absolve a contract which was illegal under a previous law. *See* 17 Am.Jur.2d *Contracts* § 172 (1964 & Supp.1988). The same rule applies for changes in public policy. *Id.* at § 175.

**14.** Council Minutes, *supra* note 5, at 26.

**15.** See note 7, *supra.* BHC cites *Gullo, supra* note 11, 101 U.S.App.D.C. 167, 247 F.2d 573, for the proposition that a cooperative can terminate membership without a vote, but that case did not involve a foreign cooperative.

a landlord-tenant relationship and that in the event of a breach or threatened breach by the Member of any covenant or provision of this Agreement, there shall be available to the Corporation such legal remedy or remedies as are available to a landlord for a breach or threatened breach under the law by a tenant of any provision of a lease or rental agreement.

Although a member of a cooperative is like a tenant in some respects, the member owns shares in the cooperative, making the member a co-owner of the property along with the other members. *See Glennon v. Butler*, 66 A.2d 519, 520 (D.C.1949) ("as between plaintiff and her cooperative corporation there was in form a landlord-tenant relationship but in substance the apartments in the building were owner occupied, and ... the monthly payments by stockholders really represented the cost of operating and maintaining their own property") (citing *Hicks v. Bigelow*, 55 A.2d 924 (D.C. 1947)).[16] Because cooperative members own their units proportionately with the other members, the Rental Housing Act of 1985 is inapplicable. A member's cooperative apartment is not a "rental unit" as defined in the D.C. Rental Housing Act because it is not "rented or offered for rent" by the cooperative to the member.[17] D.C.Code § 45–2515, which applies to "each rental unit in the District," would not apply to units owned by members, except in limited situations described in § 45–2515(a)(5) which are inapplicable here. Furthermore, the District of Columbia Rental Housing Commission, the agency charged with administering the Act under D.C.Code § 45–2512, has held that it has no jurisdiction over a conflict between a cooperative and its members. *See H & E Management v. Davis*, TP 11,049 (RHC July 9, 1984) ("The appellee is not a tenant in that he does not pay rent. He is an owner of shares in the cooperative."); *see also Winchester Van Buren Tenants Ass'n v. District of Columbia Rental Hous. Comm'n*, 550 A.2d 51, 55 (D.C.1988) (court defers to agency interpretation of its statute).

Accordingly, we hold that appellants were tenants-at-will after their interest in BHC was terminated, and as such, were entitled only to notice for tenants-at-will under D.C.Code § 45–1403. Their situation upon termination was analogous to that of the homeowners in *Simpson v. Jack Spicer Real Estate, Inc.*, 396 A.2d 212, 214–15 (D.C.1978), who after foreclosure were considered tenants-at-will and, consequently, were not entitled to the protections afforded renters from evictions by their landlords under the D.C. Rental Accommodations Act.[18] The landlord-tenant characterization in Article 13 of the Occupancy Agreement simply clarified that BHC could evict members without foreclosure proceedings and only afforded appellants the protections of a tenant-at-will.

*Affirmed.*

---

16. In some situations, courts have said that purchasers of cooperatives who rent the premises are like landlords for the purpose of evicting the person living in their individual unit. *See, e.g., Abbot v. Bralove*, 85 U.S.App.D.C. 189, 190, 176 F.2d 64, 65 (1949); *Glennon v. Butler, supra*, 66 A.2d at 522; *Hicks v. Bigelow, supra*, 55 A.2d at 925–26.

17. *See* D.C.Code § 45–2503(33) (1986 Repl.).

18. *Cf. Taylor v. First Am. Title Co.*, 509 A.2d 96, 97 n. 2 (D.C.1986); *Surrat v. Real Estate Exch., Inc.*, 76 A.2d 587 (D.C.1950).