[No. 5175-1.    Division One.    August 14, 1978.]

HUGO LOVELAND, ET AL, *Appellants,* v. STEVE LESLIE, ET AL, *Respondents.*

*Merges, Youngberg, Goucher, Allen, Larson & Brain, Edwards E. Merges,* and *William H. Goucher,* for appellants.

*Slade Gorton, Attorney General,* and *Anne Ellington, Assistant,* for respondents.

JAMES, J.—A hearing tribunal appointed by the Washington State Human Rights Commission entered a finding of discrimination on the basis of marital status against appellants, Hugo and Ruby Loveland. On appeal to superior court, the decision was affirmed. We affirm the trial court.

The Lovelands are owners of several apartment units in North Bend. In answer to a newspaper advertisement for a 2-bedroom apartment, Steve Leslie contacted the Lovelands by telephone. Leslie told Mrs. Loveland that he was interested in the apartment for himself and a male roommate. Mrs. Loveland's response was that the apartment would only be rented to married couples.

Leslie filed a complaint with the State Human Rights Commission alleging discrimination on the basis of marital status with respect to a real estate transaction. RCW 49.60.222. When conciliation efforts failed, a hearing tribunal was appointed pursuant to RCW 49.60.250. The tribunal held a public hearing, heard testimony, and ruled that the Lovelands' renting practice was unlawful.

In seeking judicial review, the Lovelands challenge both the constitutionality of the "marital status" provisions of Washington's Law Against Discrimination, RCW 49.60, and the manner in which those provisions were applied in the administrative proceeding instituted against them.

The Lovelands' constitutional challenge is that the term "marital status" as used throughout RCW 49.60 is unconstitutionally vague. They argue that the term is not defined in the act and *Webster's New Collegiate Dictionary* only provides definitions for the separate words "marital" and "status." From these definitions, the Lovelands "see that [the term] marital status may be viewed as broadly as 'state of affairs' regarding something 'of or relating to marriage or relating to a husband and his role in marriage.'"

■ We do not find the term "marital status" to be unconstitutionally vague.

The test in Washington for vagueness is the "common intelligence" test enunciated in *State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 273, 501 P.2d 290 (1972). *Sonitrol Northwest, Inc. v. Seattle,* 84 Wn.2d 588, 594, 528 P.2d 474 (1974). The terms of a statute are sufficiently defined where men of common intelligence need not guess at their meaning. The vagueness test does not require a statute to meet impossible standards of specificity. *Blondheim v. State,* 84 Wn.2d 874, 878, 529 P.2d 1096 (1975). If, based on common practice and understanding and in the context of well-defined usage, a statute provides fair notice of what it requires, then it will not be subject to a procedural due process challenge on grounds of vagueness.

*Chicago, M., St. P. & P. R.R. v. State Human Rights Comm'n,* 87 Wn.2d 802, 805, 557 P.2d 307 (1976).

■ Persons of normal intelligence commonly relate the term "marital status" to the existence or absence of a marriage bond. We hold the statute "provides fair notice" that discrimination based solely on the absence or existence of a marital relationship is prohibited. It is not unconstitutionally vague.

The basic procedural issue raised by the Lovelands' appeal concerns the appropriate standard of judicial review. They contend that the trial judge erred in concluding that the scope of judicial review was limited by Washington's administrative procedures act, RCW 34.04. The Lovelands argue that the applicable statute is RCW 49.60.270, which provides for a de novo hearing and gives the court the "power to exercise its discretion in the same manner as a case being heard before the tribunal." We do not agree.

■ In *Chicago, M., St. P. & P. R.R. v. State Human Rights Comm'n, supra* at 812, it is held that "[t]here appears to be no question that the [Washington State Human Rights Commission] is an 'agency' within the administrative procedures act." The administrative procedures act, RCW 34.04.130, provides that "judicial review" of decisions of *state* "agencies" may be obtained "only under the provisions" of the act "even though another procedure is provided elsewhere by a special statute or a statute of general application." The amended act provides that a decision may be reversed only if found to be:

(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law; or
(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or
(f) arbitrary or capricious.

RCW 34.04.130(6).

The trial judge did not err. The scope of our review is not greater than that of the trial court.

■ A second fundamental challenge by the Lovelands is that the hearing tribunal lacked jurisdiction because the Commission's staff failed to comply with RCW 49.60.240. The statute provides that if an investigation of a complaint results in a finding of reasonable cause to believe that "an unfair practice has been or is being committed," the Commission's staff "shall immediately endeavor to eliminate the unfair practice by conference, conciliation and persuasion." The Lovelands argue that the provisions of this section are jurisdictional and require a showing that the Commission conducted conciliation endeavors in good faith. We agree.

As pointed out in *Mattox v. State Bd. Against Discrimination*, 13 Wn. App. 406, 410, 413, 535 P.2d 470 (1975), the *terms* of a settlement of an unfair practice claim are necessarily "committed to the [Commission's] discretion" and "are not a matter which can be reviewed or remedied by the courts."

However, whether the staff has made a bona fide, good faith effort to eliminate an alleged unfair practice by "conference, conciliation and persuasion" is a reviewable question of fact. RCW 49.60.240.

The trial judge affirmed the findings of the hearing tribunal that:

The staff of the Washington State Human Rights Commission conducted an investigation of the complaint in accordance with RCW 49.60.240.

Finding of fact No. 11.

The staff of the Washington State Human Rights Commission attempted to eliminate the unfair practice by conference, conciliation and persuasion in accordance with RCW 49.60.240.

Finding of fact No. 12.

The staff of the Washington State Human Rights Commission followed all the procedures prescribed by the statute. Said procedures were followed in an honest, good faith effort to meet the duties imposed on the agency by statute.

Finding of fact No. 13. These findings demonstrate that the tribunal considered but rejected the Lovelands' claim that negotiations were not conducted in good faith. The record reveals that although the staff refused to modify its initial settlement offer, extensive conciliation negotiations were conducted.

The trial judge's oral decision reflects that he also carefully considered the Lovelands' claim that the Commission's staff did not negotiate in good faith. He candidly stated that he was troubled by the manner in which the conciliation endeavors were conducted. He expressed his belief that in the long run, the purposes of the Law Against Discrimination would be more effectively pursued if the Commission's staff were more malleable in carrying out its responsibilities. He concluded, however, that though he might have disposed of the discrimination complaint against the Lovelands in another manner, the judicial scope of review mandated by RCW 34.04.130(6) did not permit him to substitute his finding for that of the tribunal. We share the trial judge's concern that administrative agencies act judiciously in carrying out their administrative responsibilities. But we agree that the scope of judicial review as limited by RCW 34.04.130(6) does not permit a finding that the staff did not make a good faith conciliation effort.

The Lovelands also assign error to the trial judge's failure to find that the hearing tribunal proceedings violated the "appearance of fairness doctrine." They base their claim upon the fact that, unknown to them or their counsel, Ms. Hume, one of the three members of the hearing tribunal, was also a member of the "Commission." RCW 49.60-.051. The Lovelands rely principally upon language used by our Supreme Court in *Chicago, M., St. P. & P. R.R. v. State Human Rights Comm'n, supra.* The opinion was filed after entry of the judgment below.

In *Chicago,* it is held that a proceeding conducted by a hearing tribunal violated the "appearance of fairness doctrine" because, unbeknto the railroad, one member of

the tribunal "had a job application pending with the Commission during the time period the tribunal was processing and deciding [the] case." *Chicago,* at 806. The railroad contended that this fact created a "potential conflict of interest as to one of the tribunal members." *Chicago,* at 806.

In holding that the appearance of fairness doctrine was violated, the court stated:

> There is no direct evidence that [the challenged member of the hearing tribunal] was prejudiced or motivated in favor of the Commission, and we do not even suggest that she performed her duties as a tribunal member in less than an exemplary manner. It is the fact of her pending application for a job with the very Commission appearing before the tribunal as an advocate that strips the proceeding of the appearance of fairness. Moreover, the actual offer of employment, within a month of the date upon which the tribunal decision was signed and before the decision was finally filed with the Commission, also makes the proceedings appear less than impartial and fair. *See Swift v. Island County,* 87 Wn.2d 348, 552 P.2d 175 (1976); *Fleming v. Tacoma* [81 Wn.2d 292, 502 P.2d 327 (1972)], at 300; *State v. Madry* [8 Wn. App. 61, 504 P.2d 1156 (1972)], at 70. Under these facts and circumstances, we cannot say that a reasonably prudent and disinterested observer would conclude that the Railroad obtained a fair, impartial, and neutral hearing in the proceedings before the hearing tribunal. Therefore, the decision of the tribunal is not valid and cannot be sustained.

*Chicago, M., St. P. & P. R.R. v. State Human Rights Comm'n, supra* at 810–11.

The operative facts in this case seem, initially, to be essentially indistinguishable from those in *Chicago.* But there is a critical distinction. The administrative scheme provided by the Law Against Discrimination expressly contemplates that members of the Commission will serve on hearing tribunals. RCW 49.60.250. Conflict of interest is avoided by the provision that:

> No member or employee of the [Commission] who previously made the investigation or caused the notice to be

issued shall participate in the hearing except as a witness, nor shall he participate in the deliberations of the tribunal in such case. Any endeavors or negotiations for conciliation shall not be received in evidence.

RCW 49.60.250, in part. This provision is consistent with the requirements of the administrative procedures act.

Except upon notice and opportunity for all parties to be present or to the extent required for the disposition of ex parte matters as authorized by law, no hearing examiner or agency or member of an agency presiding in a contested case or preparing a decision, or proposal for decision shall consult with any person or party on any issue of fact or law in the proceeding, except that in analyzing and appraising the record for decision any agency member or hearing examiner may (1) consult with members of the agency making the decision, (2) have the aid and advice of one or more personal assistants, (3) have the assistance of other employees of the agency who have not participated in the proceeding in any manner, who are not engaged for the agency in any investigative functions in the same or any current factually related case and who are not engaged for the agency in any prosecutory functions.

RCW 34.04.115.

█ As authorized by RCW 34.04.130(5), the trial judge considered evidence beyond the administrative hearing record concerning Ms. Hume's participation. Our review reveals that Ms. Hume had no contact with Leslie's complaint prior to the time it came before her and the other tribunal members. She was not involved in initiating, investigating or prosecuting the complaint.

Additionally, she neither "gained [nor] lost or appeared to gain or lose by virtue of [her] decision." *Standow v. Spokane,* 88 Wn.2d 624, 638, 564 P.2d 1145 (1977). She was appointed to a nonpaid position on the Commission which she did not apply for or actively pursue. These facts are significantly distinguishable from those in *Chicago,* where a tribunal member had an employment application pending with the Commission while serving as a member of the tribunal.

There is no claim that Ms. Hume's association with the Commission actually affected her impartiality and we hold it was not inconsistent with the appearance of fairness requirement. A "reasonably prudent and disinterested observer" would not conclude Hume's association interfered with the Lovelands' right to a fair hearing. *Chicago, M., St. P. & P. R.R. v. State Human Rights Comm'n, supra* at 811.

Finally, the Lovelands claim that the trial judge erred in affirming the findings of fact of the hearing tribunal and in concluding that the Lovelands had committed an unlawful practice with respect to a real estate transaction. The trial judge did not err. Substantial evidence supports the tribunal's findings. They support the conclusion that a violation occurred.

Affirmed.

RINGOLD, J., concurs.

SWANSON, J. (dissenting)—I dissent. When appointed to the Lovelands' hearing tribunal on April 5, 1975, Ms. Linda Hume was not affiliated with the Human Rights Commission. At the time of the hearing, however, Hume had since become an official member of the Commission "actively involved in its affairs." The Lovelands were never advised of this change in Hume's relationship with the Commission. I find this clearly violative of the appearance of fairness doctrine which proscribes even the semblance of bias or prejudice on the part of an adjudicatory board member.

The case of *Chicago, M., St. P. & P. R.R. v. State Human Rights Comm'n,* 87 Wn.2d 802, 557 P.2d 307 (1976) presented a situation which the majority acknowledges is quite similar to the facts at hand. There, "[a]n impermissible conflict of interest existed . . . because one of the tribunal members . . . had a job application pending with the Commission" while the case was being processed and decided by the tribunal. *Chicago,* at 806. The court in *Chicago* expounded upon the importance of the doctrine of the appearance of fairness:

It is fundamental to our system of justice that judges be fair and unbiased. . . . An interest that is alleged to create bias or unfairness need not be direct or obvious. "Any interest, the probable and natural tendency of which is to create a bias in the mind of the judge for or against a party to the suit, is sufficient to disqualify. . . . Pecuniary interest in the result of the suit is not the only disqualifying interest."

(Citations omitted.) *Chicago,* at 807–08. These concepts of judicial integrity apply equally to administrative hearing tribunals when performing an adjudicatory, as opposed to legislative or policy–making, function. Further, and of utmost import, it is not enough that the proceeding be in fact fair or that no bias or unfairness be proven; the proceeding must *appear* to be fair.

Our system of jurisprudence also demands that in addition to impartiality, disinterestedness, and fairness on the part of the judge, there must be no question or suspicion as to the integrity and fairness of the system, *i.e.,* "justice must satisfy the appearance of justice." . . . Thus it is apparent that even a mere suspicion of irregularity, or an appearance of bias or prejudice, is to be. avoided by the judiciary in the discharge of its duties. . . . The Court of Appeals recently summarized this long standing principle rather well in *State v. Madry* [8 Wn. App. 61, 504 P.2d 1156 (1972)], at 70:

The appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as would be the actual presence of bias or prejudice. The law goes farther than requiring an impartial judge; it also requires that the judge appear to be impartial.

(Citations omitted.) *Chicago,* at 808–09. The standard applied in appearance of fairness doctrine questions turns on how the proceeding appears to a reasonably prudent and disinterested person. *Chicago,* at 810; *Swift v. Island County,* 87 Wn.2d 348, 361, 552 P.2d 175 (1976); *State v. Buntain,* 11 Wn. App. 101, 521 P.2d 752 (1974). I believe *Chicago* controls herein and Hume's undisclosed membership on "the very Commission appearing before the tribunal as an advocate . . . strips the proceeding of the appearance of fairness." *Chicago,* at 810.

The majority, however, distinguishes *Chicago* on the basis of RCW 49.60.250, which permits a Commission member to participate on a hearing tribunal provided she has not previously been involved with the case (*see also* RCW 34.04.115), and on the outside evidence considered by the trial judge demonstrating Hume had no contact with this case prior to the hearing. The majority goes on to aver that Hume neither stood to gain by virtue of any decision of the tribunal, nor was her impartiality challenged.

First, I must emphasize that actual evidence of bias or prejudice is immaterial in discussing the appearance of fairness doctrine. As stated in *Chicago,* at page 810,

> There is no direct evidence that Ms. Ammeter was prejudiced or motivated in favor of the Commission, and we do not even suggest that she performed her duties as a tribunal member in less than an exemplary manner.

The same can be said of Hume in the instant case. The question remains, however, how the hearing proceeding would appear to a reasonably prudent and disinterested party.

Second, I do not feel that the reviewing trial court's efforts to ascertain whether Hume's participation violated RCW 49.60.250, no matter how thorough, can eradicate the initial blemish on the fairness doctrine caused by Hume's undisclosed Commission membership. One problem with such a retrospective approach is that it may not have afforded the Lovelands the same manner or degree of review as was their substantive right under WAC 162–08–211(5), which permits challenges of tribunal members. On a more abstract plane, the combination of functions of an administrative agency such as the Human Rights Commission should encourage the most intensive scrutiny permissible within the applicable scope of review to insure protection of individual rights.

> The anomaly in procedure which permits the board of education, an administrative body, to serve in the triple capacity of complainant, prosecutor, and judge makes it

vitally necessary that in reviewing administrative decisions courts zealously examine the record with the view to protecting the fundamental rights of the parties, . . . *State ex rel. Steele v. Board of Educ.*, 252 Ala. 254, 261, 40 So. 2d 689, 695 (1949).

Given the narrow scope of review permitted by the administrative procedures act, RCW 34.04.130, and the concentration of investigative, prosecutorial, and adjudicative functions within the Commission, I believe it vitally necessary that reviewing courts scrutinize the record with great care to protect fundamental rights of parties and insure the preservation of fundamental notions of justice and fair play. Thus, I would not permit the reviewing trial court to decide with hindsight that a proceeding appearing unfair on its face was, in fact, acceptable, but would remand the matter to the Commission for a new proceeding.[1]

Reconsideration denied December 20, 1978.

Review denied by Supreme Court March 16, 1979.

[1] As an additional reason for invalidating the proceedings in *Chicago*, the court stated at page 812, "The general policies and informal procedures used by the Commission in constituting the hearing tribunal in this case fall within the definition of 'rule' in RCW 34.04.010(2)(b). *Cf. Island County Comm. v. Department of Revenue*, 81 Wn.2d 193, 500 P.2d 756 (1972). To the extent the Commission wishes to use such procedures, the administrative procedures act requires their formal adoption pursuant to RCW 34.04.025. Since these policies and procedures were not properly adopted, they cannot be given effect and, therefore, the proceedings before the hearing tribunal are invalid for this reason also. *See* RCW 34.04.020(2); RCW 34.04.027." Such an objection appears proper in this case also.