PRINCE GEORGE'S COUNTY, MARYLAND *v.*
GREENBELT HOMES, INC.

[No. 1595, September Term, 1980.]

*Decided July 10, 1981.*

The cause was argued before MOYLAN, LOWE and MASON, JJ.

*Robert N. Stokes, Jr., Associate County Attorney* for Prince George's County, with whom were *Robert B. Ostrom, County Attorney,* and *Michael O. Connaughton, Deputy County Attorney,* on the brief, for appellant.

*Lester B. Seidel,* with whom were *Patrick J. Clancy* and *Krooth & Altman* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Reluctant to plunge into the sea of matrimony, John Hemphill and Lynn Bradley were nonetheless eager to settle upon its shores. They had jointly contracted to purchase the right of "perpetual use and enjoyment" of a dwelling unit in a cooperative housing development known as Greenbelt Homes, Inc., situate in Prince George's County. Because the contract was "subject to an acceptance of the purchaser by Greenbelt Homes, Inc. as members," each applied for membership indicating on his application that they resided together and by the joint contract to purchase, inferentially intended to continue to do so in the dwelling unit described.

To their chagrin, they were denied membership "because [they] were not married." According to their precipitous complaint to the Human Relations Commission of Prince George's County, the spokesman for Greenbelt Homes, Inc.,

> "said that in the past the Board [of Directors] has made exceptions to its policy of not selling to unmarried persons but never for an unmarried couple. He stated that not being married was the only reason for our rejection, that everything else was alright."

Anxious to fulfill its destiny as destroyer of discrimination, the Commission made ready to do battle, apparently to

provide surcease for the sensitivities of those whom they clept "Complaintants."

The Complainants had not alleged that they had been deprived individually of membership which under the by-laws stipulated that

"Only one person per dwelling unit may be a member of the Corporation. . . ."

They were concerned solely with the "policy" of not selling to unmarried couples which stemmed from the provision in the by-laws that excepted from the individual membership restriction,

"that a husband and wife or other persons specifically authorized in any case by the Board of Directors may hold a membership jointly."

The Commission perceived discrimination from a different perspective. It noted that Greenbelt's Mutual Ownership Contract contained a covenant that

"The member shall occupy the dwelling unit covered by this contract as a private dwelling from the date of occupancy . . . for himself and his immediate family. . . ."

Focusing on the word "family" (while ignoring its immediately preceding restrictive adjective), the Commission rejected the "generally accepted" interpretation of "family" applied by Greenbelt Homes, and took "notice" that Webster's *Seventh New Collegiate* Dictionary (1967 edition) listed a series of definitions for "family" broad enough to cover not only "[a] group of persons of common ancestry," but also "a group of individuals living under one roof . . .," a "group of things related by common characteristics," "fellowship" and more pointedly,

"A basic unit in society having as its nucleus two or more adults living together, and cooperating in the care and rearing of their own or adopted children."

The Commission also took "notice" that § 10.0 of the Prince George's County Zoning Ordinance defines a family for housing occupancy purposes as,

"An individual, or two or more persons related by blood or marriage, or a group of not more than five persons (excluding servants) not related by blood or marriage, living together as a single housekeeping group in a dwelling unit. . . ."

The Commission further concluded that

"Greenbelt Homes, Inc.'s claim (The Board of Directors acting as Greenbelt Homes, Inc.) that their verbally expressed, only, interpretation of 'family' being 'commonly accepted' is not valid."

It then held that Greenbelt's covenant, so interpreted, contravened a local ordinance against discrimination which proscribed

"acting, or failing to act, or unduly delaying any action regarding any person because of . . . marital status . . . in such a way that such person is adversely affected in the area[s] of housing. . . ." Prince George's County Code, § 2-186(3).

Caught up in the cause which by now seemingly surpassed its "complaintants" (who we empirically note have since married and become ensconced elsewhere), the Commission ordered (among other things):

"That Greenbelt Homes, Inc. revise their [sic] Membership Agreement and their [sic] Mutual Ownership Contract to eliminate any provisions which are contrary to federal, state and/or local laws and/or ordinances."

Our purpose in belaboring how the Commission arrived at its result is to emphasize by its omission that the Commission did not find that a covenant restricting membership to one's immediate "family" as that term is

"commonly accepted" would have been discriminating because of marital status. It found only that the definition applied by Greenbelt to its covenant was invalid and implicitly should be defined as broadly as any of Webster's alternatives, and at least as broadly as the Zoning Ordinance of which the Commission took "notice."

Pursuant to § 2-197 of its Code, Prince George's County filed suit for declaratory judgment and mandatory injunction in the Circuit Court for Prince George's County in equity to enforce the order of the Commission. Greenbelt Homes, Inc. answered and sought declaratory judgment as to the meaning of the terms "marital status" as used in the code and "family" as used in the Greenbelt covenants. Greenbelt had sought to have the Commission ruling appealed to the Circuit Court for Prince George's County for review; but the case was dismissed, we are told, for want of jurisdiction. The parties here then stipulated that the court record containing the Commission record be made a part of the record of this enforcement proceeding.

The case was submitted on motions for summary judgment by both parties; that of the County was denied and that of Greenbelt granted. In its opinion, which we shall accept as the requested declaration, (*Reddick v. State,* 213 Md. 18, 31 (1957)), the judge did not define "family" as requested. In defining "marital status," however, he held that

> "People who are not married to one another do not have a marital status and for that reason it is clear that the legislative body did not intend for such to apply. If the County Council of Prince George's County wants that intent, the ordinance should be amended to prohibit marital status 'or lack thereof.' "

The issue raised on appeal by Prince George's County is

> "whether the appellee's practice of refusing to approve or enter into perpetual use agreements with unmarried heterosexual couples constitutes

marital status discrimination within the meaning
of § 2-186(3), Prince George's County Code? "

But the issue is not nearly so conceptually broad. When we
reflect upon the Human Relations Commission Order, it is
that foundation with which we find primary fault. If we
addressed the question asked in isolation, a simple
affirmance would support the result of the Court's judgment
but leave in limbo a highly questionable declaration which
is the crux of this appeal. Significantly, Maryland's statute
with regard to "Discrimination in Housing" also makes it an
unlawful practice to discriminate in regard to housing
"because of ... marital status" (Md. Ann. Code Art. 49B,
§ 20). A declaration regarding that term in context takes on
added interpretative importance. It is noteworthy that the
term "marital status" appears 100 times in the Annotated
Code of Maryland scattered in some 31 different, although
often related, sections. Since Judge Ross' proclamation that

"People who are not married to one another do not
have a marital status. . ."

is somewhat misleading, we will attempt to clarify the
meaning of that term as used in the context of the housing
discrimination law before addressing the Commission's
erroneous definition of "family" in its even more restrictive
context in the covenant. *See* Md. Rule 1085.

— marital status —

Under the facts presented, we point out that neither
complainant (each of whom was "single," "unmarried") was
denied membership *individually* because of his or her
*individual* marital status. While each separately had a
marital status, collectively they did not. Only marriage as
prescribed by law can change the marital status of an
individual to a new legal entity of husband and wife. The law
of Maryland does not recognize common law marriages
(*Henderson v. Henderson,* 199 Md. 449, 454 (1952)) or other
unions of two or more persons — such as concubinage,

syneisaktism, relationships of homosexuals or lesbians — as legally bestowing upon two people a legally cognizable marital status. Such relationships are simple illegitimate unions unrecognized, or in some instances condemned, by the law. That public policy message rings out from the procedural prerequisites for legitimating "marriages," Md. Ann. Code Art. 62, and the statutory condemnation of other relationships, *see, e.g.,* Md. Ann. Code Art. 27, § 18 (Bigamy) and §§ 390 *et seq.* The obvious intent of our legislature is to encourage the proverbial concept that more belongs to a marriage than four bare legs in a bed.[1] Even contemporary discrimination laws are not intended to promulgate promiscuity by favoring relationships unrecognized by statute or case law as having legal status.

Neither Mr. Hemphill nor Ms. Bradley was denied membership in Greenbelt Homes, Inc. because he or she was single. *They* were denied joint membership because neither Greenbelt nor the law of Maryland recognized their union as cloaking them with a "marital status." Greenbelt simply refused to acknowledge that the naked emperor was wearing clothes. The complainants who were not then married may not compel treatment as an entity (*e.g.,* as tenants by the entireties, *see Lopez v. Lopez,* 250 Md. 491, 510 (1968); and *c.f., McManus, et al. v. Summers,* 290 Md. 408 (1981)), any more than a married couple may be treated as single for preferential tax treatment, *see e.g., Helvering v. Janney,* 311 U.S. 189 (1940). We are what we are, and it is in that capacity which we must be judged even when we seek the judgment.

— family —

The crux of the Commission's order, however, was its finding that Greenbelt's "commonly accepted" definition of the term "family" is invalid. The Commission held that the term "family" as used in the contractual covenant included — as a matter of law — at the very least the two

---

1. Wilson, *The Oxford Dictionary of English Proverbs* 513 (3d. Ed. 1970).

complainants, but interpretatively as many as "five persons ... not related by blood or marriage, living together as a single housekeeping group in a dwelling unit," which it gleaned from the local zoning ordinance.

The Court of Appeals has noted that the statutory use and definition of the word "family" may be (and often is) limited to the purposes of a specific act. *Hicks v. Hatem,* 265 Md. 260, 264 n. 1 (1972). In that case the Court of Appeals was interpreting the use of the term "family" in the household exclusion provision of insurance contract, just as we are here concerned with an exclusionary provision in a contract. There the Court agreed with Greenbelt's observation of the "commonly accepted" interpretation of terms:

> "It would thus appear that in common parlance and usage the word 'family' more frequently connotes the existence of a marital or blood relationship, or a *legal* status approximating such relationship." *Id.* at 264. (Emphasis added).

Noting that common law marriages are not recognized in Maryland as a "legal status," the Court held that an unmarried woman living without consanguinal ties within an insured's household did not "in this State" possess a legal status which was the equivalent of being a "family" member. It would seem to follow that the Greenbelt covenant meant what Greenbelt intended it to mean, rather than what the Commission wanted it to mean. From at least as early as 1833, we are told that in construing covenants they must be viewed in context and in accordance with the intention of the covenantors. *See, Watchman v. Crook,* 5 G & J 239 (1833).

But even without a clear contextual intent, words express whatever meaning convention has attached to them. *Trimble v. Seattle,* 231 U.S. 683 (1914). In "The Theory of Legal Interpretation," 12 Harv. L.R. 417 (1899), Oliver Wendell Holmes pointed out that:

> "A word generally has several meanings, even in the dictionary. You have to consider the sentence in which it stands to decide which of those meanings

it bears in the particular case, and very likely will see that it there has a shade of significance more refined than any given in the word-book."

It is apparent that the Commission's declaration of invalidity of Greenbelt's definitional application of the term "family" was an error of law affecting its decision. Md. Ann. Code Art. 41, § 255 (f) (4); or, if found as a fact, it was unsupported by competent material, and substantial evidence in view of the entire record as submitted. Md. Ann. Code Art. 41, § 255 (f) (5). It follows that without regard to the judge's rather broad definitional reasoning regarding the meaning of "marital status," he did not err in refusing to enforce the defective order of the Commission at the insistence of the County.

Finally, we cannot conclude without noting that the Court of Appeals has given recognition sub silentio to the Greenbelt Homes, Inc. policy complained of by the original parties in this case as "never [authorizing joint membership] for an unmarried couple." Although not written in either the light or the shadow of the recent influx of discrimination laws, the Court of Appeals was by no means offended by this same appellee's termination of membership of a single woman who "persistently and grossly" violated her contract by (among other things) living with "an adult man" to whom she was related neither by blood nor marriage. The Court affirmed the termination of her interest for such "objectionable conduct." *Green v. Greenbelt Homes, Inc.,* 232 Md. 496 (1963).

> *Judgment affirmed.*
> *Costs to be paid by appellant, Prince*
> *George's County.*