550 A.2d 402

**STATE of Maryland**

v.

**Daniel Dennis McGRATH.**

**No. 439, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Nov. 30, 1988.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty., Montgomery County, Rockville, on the brief), for appellant.

Madalyn E. Johns (Corey & Johns, P.C., on the brief), Rockville, for appellee.

Argued before MOYLAN, WILNER and ROBERT M. BELL, JJ.

WILNER, Judge.

The appeal before us presents a question of statutory interpretation.   Md.Ann. Code art. 27, § 641(a)(1)—at the time germane to this appeal—provided, in relevant part, that:

> "Whenever a person accused of a crime pleads guilty or nolo contendere or is found guilty of an offense, a court exercising criminal jurisdiction, if satisfied that the best interests of the person and the welfare of the people of the State would be served thereby, and with the written consent of the person after determination of guilt or acceptance of a nolo contendere plea, may stay the entering of judgment, defer further proceedings, and place the person on probation subject to reasonable terms and conditions as appropriate."

Section 641(a)(2), however, precluded a court from entering such a disposition where the defendant, charged with driving while intoxicated (Md.Transp.Code Ann. § 21–902(a)) or driving while under the influence of alcohol (§ 21–902(b)), is found to have violated one of those statutes on an earlier occasion.   In particular, § 641(a)(2) provided, in relevant part, that:

"a court may not stay the entering of judgment and place a person on probation for a second or subsequent *violation* of § 21–902(a) or (b) of the Transportation Article if the second or subsequent *violation* occurred within 5 years of the previous *violation.* A person is in violation of § 21–902(a) or (b) if that person receives probation under this section."

(Emphasis added.)[1]

The question here is whether, in the context used in § 641(a)(2), "violation" refers to the actual transgression (and the date thereof) or the subsequent adjudication of or conviction for the transgression (and the date thereof).

On the evening of February 21, 1987, Montgomery County police officers stopped appellee's truck, formed the belief that appellee was intoxicated, and charged him with driving while intoxicated and driving under the influence of alcohol. On March 6, 1987, appellee was again stopped in Montgomery County, suspected of being intoxicated, and charged with driving while intoxicated and driving under the influence of alcohol.

The February 21 charge was scheduled for trial in the District Court on April 10, 1987, but upon appellee's request for a jury trial, it was removed to the Circuit Court for Montgomery County. On June 8, 1987, the March 6 charge came to trial in the District Court; the court accepted appellee's plea of guilty to driving under the influence of alcohol and, aware that the February 21 charge was still pending in the Circuit Court, denied appellee's request for probation before judgment and entered a verdict of guilty.

---

1. By 1988 Md. Laws, ch. 562, the Legislature amended § 641(a)(2) to preclude the entry of probation before judgment for a second or subsequent violation of "any provision of § 21–902," rather than just subsection (a) or (b) of § 21–902. The amendment serves to bring within the ambit of § 641(a)(2) violations of § 21–902(c) and (d)—driving under the influence of drugs or controlled dangerous substances. The 1988 enactment took effect after the relevant events in this case. We shall therefore deal with and cite the law in effect before that enactment.

Appellee moved for reconsideration, and, on September 26, 1987, the District Court relented and entered probation before judgment.[2]

In the meanwhile, appellee had attempted to plead guilty to the February 21 charge of driving under the influence, but the Circuit Court initially refused to accept the plea and instead set the case for trial. On March 10, 1988, however, a different Circuit Court judge accepted the plea. Two weeks later, over the State's objection, the court granted probation before judgment in that case as well.

Construing the word "violation," as used in § 641(a)(2) as though it read "conviction" or "adjudication," the State argues in this appeal that the court imposed an illegal sentence on the February 21 charge. That charge, though the first made, was the second adjudicated and, for that reason, says the State, was not subject to disposition by probation before judgment. The issue is clear and easily stated: was the February 21 charge, adjudicated on March 10, 1988, the first or the second "violation"?

■ The alpha and omega of all the various rules of statutory construction is to ascertain and carry out the legislative intent. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 525 A.2d 628 (1987). If the language of the statute "is plain, unambiguous and has a definite and sensible meaning, that meaning is presumed to be that intended by the legislature." *Comm'n on Human Rel. v. Greenbelt Homes,* 300 Md. 75, 83, 475 A.2d 1192 (1984); *see also Bledsoe v. Bledsoe,* 294 Md. 183, 448 A.2d 353 (1982). Normally, then, "[t]he search for legislative intent begins with an examination of the statute itself and if the language is of clear import, the inquiry ends." *Crawley v.*

---

**2.** Whether a court, having entered a verdict of guilty, is empowered later to strike that verdict and enter probation before judgment is not an issue raised in this appeal and we express no opinion as to that practice. *Compare* Md. Rule 4-345, giving a court revisory power over a *sentence,* and Md. Rule 4-331, allowing a court to set aside an "unjust or improper" verdict and grant a new trial.

*General Motors Corp.*, 70 Md.App. 100, 105, 519 A.2d 1348, *cert. denied* 310 Md. 147, 528 A.2d 473 (1987). Occasionally, where the statutory language is not "so clearly consistent with [the legislature's] apparent purpose" or, if applied literally, would produce an absurd result, other "external manifestations" may be considered. *Kaczorowski v. City of Baltimore, supra,* 309 Md. at 515, 525 A.2d 628. These include "a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal...." *Id.*

An examination of the statutory language, especially in light of its legislative history and the language used in analogous enactments by the General Assembly, convinces us that the word "violation," as used in § 641(a)(2), refers to the commission of the act proscribed by Transp. art., § 21–902(a) or (b) and not to the subsequent adjudication that such act was committed. In ascertaining which is first and which is "second or subsequent," then, we look to the transgression itself and when it was committed and not to the order of adjudication.

In its present form, § 641(a)(2) is in the nature of a subsequent offender/enhanced punishment statute; it denies a lenient disposition, otherwise allowable, to one who has previously violated the same law. Interestingly, the bill that first enacted the statute did not start out as a subsequent offender provision. It would have instead exempted § 21–902(a) or (b) violations entirely from the provisions of § 641(a)(1). In its first reader form, the bill precluded probation before judgment "if the offense is for violation of § 21–902(a) or (b) of the Transportation Article." *See* House Bill 161 (1982), 1982 Md. Laws, ch. 98. That was changed during the legislative process, however. As enacted in 1982, § 641(a)(2) precluded application of § 641(a)(1) "for a second or subsequent *finding of guilt* of § 21–902(a) or (b)...." (Emphasis added.)

The substitution of the phrase "finding of guilt" for "violation" was presumably deliberate, as it was part of the amendment converting the bill into a subsequent offender provision. Unfortunately, it created an ambiguity in the statute. Some judges apparently concluded that the term did not embrace probation before judgment and thus held that, if an earlier violation resulted in probation before judgment, the same disposition could be (and in some instances was) given with respect to the second violation, the theory being that there had been no prior "finding of guilt." Although the Governor's Office strongly disputed that proposition, calling attention to the fact that, under § 641(a)(1), probation before judgment could be entered only "after determination of guilt or acceptance of a nolo contendere plea," it nevertheless concluded that the law should be clarified. The result was Senate Bill 515, introduced into the 1983 session as an Administration measure. *See* testimony of then Lt. Governor (now Attorney General) Curran before the Senate Judicial Proceedings and House Judiciary Committees on SB 515 and its companion HB 887.

The mechanism initially chosen by the Governor's Office to make this clarification was to revert to the term "violation" in place of "finding of guilt" in § 641(a)(2). As Lt. Governor Curran explained in his testimony, "In order to resolve the situation and clarify that a person who receives a probation before judgment for an alcohol offense, Senate Bill 515 and House Bill 887 substitute the word 'violation' for 'finding of guilt.'" *See also* Committee Report of Senate Committee on Judicial Proceedings on SB 515, March 16, 1983.

The Legislature, it seems, entertained some doubt as to whether the mere substitution of "violation" for "finding of guilt" would resolve the ambiguity, for, although it accepted that change, it also added a new sentence to the bill making clear that probation without judgment would suffice as a predicate prior offense. The new sentence reads: "A person is in violation of § 21–902(a) or (b) if that person receives probation under this section."

The 1983 bill had a second purpose as well, to limit the exclusion of § 641(a)(2) to the case where the second or subsequent violation occurred within a specified time after the first. As introduced, the bill would have required the second violation to be within 10 years after the first; the Legislature amended that provision by reducing the 10 years to five. Although the time requirement is not directly germane to this case, as both violations here were committed and adjudicated well within five years of one another, the addition of that requirement does make more critical a careful examination of the word "violation," and what the Legislature intended by it.

The special problem engendered by the time requirement is illustrated by *Rabon v. South Carolina State Highway Dept.*, 258 S.C. 154, 187 S.E.2d 652 (1972). At issue there was a South Carolina statute that provided an enhanced penalty for a second "violation" of the drunk driving laws occurring within 10 years after an earlier "violation." Mr. Rabon was charged with violating the law on September 5, 1960; he was convicted on that charge on an unspecified date that was prior to October 20, 1960; his second transgression came on August 29, 1970, which was brought to trial on October 19, 1970. The question there, as here, was whether the predicate "violation" was the transgression itself or the conviction for that transgression: if the former, Rabon was subject to the enhanced punishment, for the August, 1970 "violation" would be within 10 years after the September, 1960 "violation"; if the latter, he was not within the 10-year period, for the first conviction would have been more than 10 years before the second. Declaring the statute to be clear and unambiguous, the Court held, 187 S.E.2d at 654:

"The word 'violation' has an ordinary and popular significance. It means the act of breaking, infringing, or transgressing the law—in this instance, the law prohibiting one from driving under the influence of intoxicants, etc. The phrase 'date of the last violation' therefore means the date of the actual driving under the influence,

admittedly, August 29, 1970, which was within ten years of September 5, 1960, the date of the first violation. There is nothing in the statutes to suggest that the word 'violation' was used in other than its ordinary significance."

The South Carolina Court did indeed apply the common, ordinary significance of the word. *See Black's Law Dictionary* 1408 (5th ed. 1979); *Ballentine's Law Dictionary* 1345 (3d ed. 1969) (defining "violation of law"). Other courts have done so as well. *See, for example, United States v. Young,* 745 F.2d 733 (2d Cir.1984), *cert. denied* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985), and *United States v. Markowski,* 772 F.2d 358 (7th Cir.1985), *cert. denied* 475 U.S. 1018, 106 S.Ct. 1202, 89 L.Ed.2d 316 (1986), holding that, for purposes of the Federal Continuing Criminal Enterprise statute, "violation" is not synonymous with "conviction."

The case now before us is, of course, a little different from that presented in *Rabon* in that the time period is not directly involved. We must recognize, however, that the *Rabon* situation could arise under § 641(a)(2) and that whatever definition or signification we give to the term "second or subsequent violation" in the one case would necessarily have to apply in the other as well. We must also presume that, in deliberately converting § 641(a)(2) into a subsequent offender law and then adding the time requirement limiting its operation, the Legislature understood that (1) the order of arrests could be different than the order of adjudications and, (2) as in the *Rabon* case, even if the sequence of adjudications was the same as the sequence of arrests, one sequence might fall within the required period whereas the other might not.

The General Assembly was by no means a novice in drafting and enacting subsequent offender laws; it had enacted a number of them in the past and knew well how to construct such a law and how to express the circumstances under which it would apply. An examination of some of these laws is illuminating.

In Md. Code Ann. art. 27, § 643B(b) and (c), the Legislature provided for mandatory enhanced punishments upon a third or fourth "conviction" of certain violent crimes. Those statutes are carefully constructed to require a specific sequence: the predicate event is the "conviction," not the underlying transgression, and the convictions used as the predicate must precede the commission of the offense for which the enhanced punishment is sought. *Garrett v. State*, 59 Md.App. 97, 474 A.2d 931, *cert. denied* 300 Md. 483, 479 A.2d 372 (1984). In § 286(b) of art. 27, the Legislature again used a "conviction" as the predicate event, applying an enhanced punishment to anyone "who has previously been convicted under this paragraph."

In § 293(a) of art. 27, the Legislature used somewhat different language but still made clear the same inter⌐ The enhanced punishment under that statute applies "if offense is a second or subsequent offense." Standing alone, that might raise the same question as is before us now, but the General Assembly went on in § 293(b) to provide that, for purposes of subsection (a), "an offense shall be considered a second or subsequent offense, if, prior to the conviction of the offense, the offender has at any time been convicted of any [controlled dangerous substance offense]." *See also* art. 27, § 36B(b)(ii) and (iii) and *cf.* § 36B(d) read in light of *King v. State*, 300 Md. 218, 477 A.2d 768 (1984).

In sharp contrast to these statutes, all of which were "on the books" when the Legislature amended § 641(a)(2) in 1983, the General Assembly decided not to use "conviction" as the predicate event; indeed, it departed from the "finding of guilt" criterion that it had deliberately chosen for this provision only a year earlier in favor of "violation." As we observed, the change in language from "finding of guilt" to "violation" was not necessary to bring a prior probation before judgment within the ambit of the statute; that purpose was achieved more directly by the new sentence added to the bill. Are we to presume, then, that this change was inadvertent, without consequence, or designed solely to achieve a purpose that the change was not neces-

sary to achieve? To make such an assumption, we think, would not be consistent with the rationale of *Kaczorowski.*

As we have seen, the term "violation," even in the context of an enhanced punishment law, has a specific meaning; it is not synonymous with "conviction" or "adjudication." Moreover, in this instance, giving the term its ordinary meaning and signification produces neither an absurd result nor one clearly at odds with an "apparent purpose" of the Legislature. It is not at all unreasonable to suppose that, in deliberately carving out this area of the criminal law for special treatment, the General Assembly fully intended the five-year period in particular and the operation of the statute in general to be measured by the wrongful acts themselves and not by the vagaries of when the charges flowing from those acts were actually adjudicated. That, in this instance, the defendant has succeeded in manipulating the law to his own advantage is not a reason to reach a strained construction of an otherwise clear provision. The order or sequence of the "violations" is the order or sequence of the transgressions, not the order or sequence of the adjudications. It follows, then, that the instant offense was the first "violation," for which probation before judgment was a permissible disposition.

JUDGMENT AFFIRMED; MONTGOMERY COUNTY TO PAY THE COSTS.